[Cite as *State v. Poland*, 2024-Ohio-2896.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | JUDGES: | |
| | : | Hon. Patricia A. Delaney, P.J. | |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. | |
| | : | Hon. Craig R. Baldwin, J. | |
| -vs- | : | | |
| | : | | |
| MICHAEL WAYNE POLAND, | : | Case No. 2023CA00081 | |
| | | 2023CA00082 | |
| | : | | |
| Defendant - Appellant | : | O P I N I O N | |


CHARACTER OF PROCEEDING:           Appeal from the Canton Municipal
Court, Case Nos. 2022 CRB 5461
and 2022 TRD 6338


JUDGMENT:                     Affirmed


DATE OF JUDGMENT:          July 30, 2024


APPEARANCES:

For Plaintiff-Appellee

JASON P. REESE
Canton Law Director

KATIE M. ERCHICK
Canton City Prosecutor

KATE M. LUKOSAVICH
Assistant Prosecutor
218 Cleveland Ave. SW
Canton, Ohio 44702

For Defendant-Appellant

DONALD K. POND
567 Turkeyfoot Lake Rd., Suite 107
Akron, Ohio 44319

*Baldwin, J.*

## STATEMENT OF THE FACTS AND THE CASE

**{¶1}** On November 28, 2022, a complaint was filed against the appellant by an Ohio State Highway Patrol officer in Canton Municipal Court, Case Number 2022 CRB 5461, charging the appellant with vehicular homicide in violation of R.C. 2903.06(A)(3), a misdemeanor of the first degree; and, vehicular manslaughter in violation of R.C. 2903.06(A)(4), a misdemeanor of the second degree. In connection with these charges, the appellant was also cited in Case Number 2022 TRD 6338 for failure to yield the right-of-way when turning left in violation of R.C. 4511.42, a minor misdemeanor. The appellant was arraigned on December 2, 2022, at which time he pleaded not guilty. The appellant thereafter requested a jury trial. A jury trial took place on April 18 and April 19, 2023, during which the following evidence was presented.

**{¶2}** On October 22, 2022, the appellant was traveling in the northbound lane on Dueber Avenue, approaching the Fohl Street intersection. At the same time and place, J.H. was traveling on his motorcycle in the southbound lane on Dueber Avenue, also approaching the Fohl Street intersection. The appellant and J.H. proceeded towards one another and were initially located on the opposite slopes of the Dueber Avenue hill. As the appellant progressed towards the intersection, and as J.H. traversed over the crest of the hill, a crash occurred.

**{¶3}** Witness Layla Muster testified that she was stopped on Fohl Street at the Dueber/Fohl intersection at the time, and witnessed the crash. She testified that "[T]he whole incident [occurred within] approximately six seconds." Muster looked "right and left, [and saw] the motorcycle coming." Muster testified that she "[could] see that [the

appellant] was going to make a left-hand turn in front of the motorcycle." Muster testified that neither the appellant nor J.H. "slow[ed] down," and that "[t]hey weren't going fast[,] but they weren't slowing down." Muster testified that she waited at the intersection and saw that "neither one [was] slowing down and [the appellant] hadn't started the turn yet." When both J.H.'s motorcycle and the appellant's vehicle were "[a]t the intersection," Muster saw the appellant "start [his left-hand] turn" from Dueber Avenue towards Fohl Street. Muster testified that from her vantage point "[i]t looked to me like the car hit the motorcycle, although she acknowledged that she was subsequently told the motorcycle and appellant's vehicle "never touched during the crash." She testified that "[t]he guy laid ... laid his bike down and it went off and he [was] laying in the street and the car [was] right there." Muster testified that the appellant's car was not "completely turned ... [b]ut had started its turn."

{¶4} Witness Edward Kocher testified that he was traveling southbound on Dueber Avenue several hundred feet behind J.H.'s motorcycle, and witnessed the aftermath of the crash but not the crash itself. Kocher testified that he "happen[ed] to be following a motorcycle, a gentleman on a motorcycle and when [he] came up over the hill, the gentleman was laying on the ground and had been hit by the gentleman in the car that had been over the lane and when [he] stopped to see if [he] could be of assistance, the gentleman was moving his car to the side of the road." He testified that he saw the appellant's car "over the double yellow lines." Kocher testified that as soon as he stopped at the scene, the appellant "was [already] moving his car."

{¶5} Investigating officers at the crash scene deduced that "the [motorcycle] crash occurred because [the appellant's] vehicle began [its] turn." Ohio State Highway

Patrol Trooper William Kanters testified that he spoke with witnesses, took photos of the accident scene, and thereafter left the scene. Portions of his body-cam footage were played for the jury depicting him speaking with witnesses, including the appellant, and taking photos of the accident scene.

{¶6}   State Highway Patrol Officer George Ksenich was another investigating officer who testified at trial. Portions of his body-cam footage were played for the jury during his testimony. Based upon the officers' analysis, "[U]nit [O]ne [the appellant] was traveling north on Dueber [Avenue SW], slowed to make a left a turn onto Fohl [Street]. Unit [T]wo [J.H.] was traveling south on Dueber Avenue approaching the intersection. And [U]nit [O]ne started to make a left turn then stopped in the roadway. The driver of [U]nit [T]wo to avoid the collision braked heavily and then became separated from the motorcycle. [U]nit [T]wo continued south while [its] driver struck the front of [U]nit [O]ne."

{¶7}   State Highway Patrol Officer Ashley Jackson, also an investigating officer on scene, testified at trial as well. Portions of her body-cam footage were played for the jury during her testimony. Officer Jackson testified that the officers located "little pieces of plastic" debris and a "puddle of fluid" located over the yellow dividing line at the scene of the crash. Based upon the respective locations of the plastic debris and the puddle of fluid, the officers placed the appellant's car in the lane of the motorcycle. Thus, the officers concluded that the appellant was "at fault for [the] crash." Officer Jackson testified that the appellant "appeared to be going into the motorcyclist's lane of travel and the motorcyclist did what he could to avoid striking the vehicle that was entering his lane ... ," and that "[i]t appeared that [the appellant's vehicle] had crossed the center line appearing that he was going to enter the travel lane of the motorcycle and the motorcycle took

evasive action to try to avoid striking the [appellant's vehicle.]" Officer Jackson surmised that J.H.'s "body struck [the appellant's] vehicle" at its "left front corner," and that impact "caused [the appellant's] car to leak some fluid." In response to this testimony, the appellant's counsel argued that officers did not collect a sample of the fluid for testing or evaluation to determine and confirm its source, nor did they collect the plastic debris for comparison and matching to the appellant's vehicle.

{¶8} The testimony of Dr. Anthony Bertin, Stark County Chief Deputy Coroner, was also presented during trial. Dr. Bertin testified that J.H. died from injuries to his head and neck received as a result of the collision. Following Dr. Bertin's testimony, the appellee rested and its exhibits were admitted.

{¶9} The appellant made a Criminal Rule 29 motion for acquittal which was denied, and then called Harry Campbell, Chief Investigator for the Stark County Coroner's Office as his first witness. Mr. Campbell testified that he lived next to where the collision occurred, and when he heard the collision walked down to the scene. His official jurisdiction began when he was called from the hospital and told that J.H. had died, at which time he began his investigation. Mr. Campbell, who was also a police officer at the time of the collision, gathered information from the Ohio State Highway Patrol crash report, the EMS run report, and the hospital records. The appellant's counsel attempted to utilize Campbell's testimony to discredit the evidence presented by appellee regarding the status of the appellant's left-hand turn at the time of the collision, and whether J.H.'s motorcycle made contact with the appellant's vehicle.

{¶10} The appellant then presented accident reconstruction expert witness Vincent Cronin, who testified regarding his analysis of the crash data. Cronin cautioned

against the officers' conclusion that the appellant entered the motorcyclist's lane of travel. He testified further that the puddle of what appeared to be fluid on the pavement measured nineteen inches by fourteen inches, stating "[t]hat's a substantial amount of fluid to collect in about six seconds," and that "the whole incident took approximately six seconds."  He testified further that the appellant's car, and the area upon which it was parked following the crash, showed no indications or signs of fluid leakage. Cronin also testified that "[t]here was ... nothing in any of the photos or any of the body cam videos that would indicate that there was contact made between [the appellant's vehicle] and [J.H.] himself." Cronin surmised that there was no evidentiary confirmation that the appellant's vehicle "crossed the center line."  On cross examination, Cronin admitted that the fluid depicted in the accident scene photographs was "likely vehicle fluid." The appellant rested following Cronin's testimony.

**{¶11}**  The jury heard closing arguments, was instructed by the trial court, and sent to deliberate. Following its deliberations, the jury found the appellant not guilty of vehicular homicide, and found him guilty of vehicular manslaughter. On April 21, 2023, the trial court journalized the jury verdicts, thereby finding the appellant not guilty of vehicular homicide, and guilty of vehicular manslaughter. The court also found the appellant guilty of the minor misdemeanor failure to yield.

**{¶12}**  On May 3, 2023, the appellant filed a motion for judgment of acquittal, which the trial court denied. Pursuant to journal entries docketed on May 24, 2023, and June 7, 2023, the trial court sentenced the appellant to twelve days in jail, commencing October 20, 2023, and two years of supervised probation. In conjunction with jail time and probation, the court imposed a two-year driver's license suspension and six points. In

addition, the court ordered the appellant to pay court costs, and to undergo a substance abuse assessment and follow and complete all recommendations of the assessment.

{¶13} The appellant filed a timely appeal, and sets forth the following two assignments of error:

{¶14} "I. THE TRIAL COURT ERRED BY ENTERING A GUILTY FINDING AGAINST MICHAEL WAYNE POLAND FOR THE CHARGE OF VEHICULAR MANSLAUGHTER, IN THE ABSENCE OF SUFFICIENT EVIDENCE, CONTRARY TO DUE PROCESS AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION. (T.D. 46-48, 2022 CRB 5416)."

{¶15} "II. THE TRIAL COURT ERRED BY ENTERING A GUILTY FINDING AGAINST MICHAEL WAYNE POLAND FOR THE CHARGE OF VEHICULAR MANSLAUGHTER, AS THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. (T.D. 46-48, 2022 CRB 5416)."

### STANDARD OF REVIEW

{¶16} The appellant argues that his conviction on the charge of vehicular manslaughter was not based upon sufficient evidence, and was against the manifest weight of the evidence.

{¶17} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 164 Ohio St.3d. 589, 2021-Ohio-2207, 174 N.E.3d 754:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶18}** Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The Court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the

evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

{¶19} Further, the Court in *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978), stated:

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Id.* at 80, fn. 3.

### ANALYSIS

**{¶20}** The appellant argues that his conviction on the charge of vehicular manslaughter was not based upon sufficient evidence, and was against the manifest weight of the evidence. We disagree, and address his assignments of error together.

**{¶21}** Following a two-day trial during which it heard testimony from three law enforcement officers, two witnesses, the Stark County Chief Deputy Coroner, the Chief Investigator for the Stark County Coroner's Office, and the appellant's accident reconstruction expert witness, the jury unanimously found the appellant guilty of vehicular manslaughter in violation of R.C. 2903.06(A)(4), which provides:

(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:

*         *         *

(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor.

{¶22} Based upon the jury's finding of vehicular manslaughter, the trial court entered judgment against the appellant for failure to yield in violation of R.C. 4511.42, which states in pertinent part:

(A)    The operator of a vehicle, streetcar, or trackless trolley intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle, streetcar, or trackless trolley approaching from the opposite direction, whenever the approaching vehicle, streetcar, or trackless trolley is within the intersection or so close to the intersection, alley, private road, or driveway as to constitute an immediate hazard.

(B)    Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor. If, within one year of the offense, the offender previously has been convicted of or pleaded guilty to one predicate motor vehicle or traffic offense, whoever violates this section is guilty of a misdemeanor of the fourth degree. If, within one year of the offense, the offender previously has been convicted of two or more

predicate motor vehicle or traffic offenses, whoever violates this section is guilty of a misdemeanor of the third degree.

**{¶23}** We have reviewed the record as outlined above and find that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the appellant committed the essential elements of failure to yield and, therefore, vehicular manslaughter.

**{¶24}** Furthermore, we have thoroughly reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, and have determined that in resolving conflicts in the evidence the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. This case does not present an "exceptional case in which the evidence weighs heavily against the conviction." Moreover, even if the evidence in this case is susceptible of more than one construction, we are bound to give it that interpretation which is consistent with the jury's decision and is most favorable to sustaining the jury's verdict and judgment. Accordingly, we find that the jury's verdict on the charge of vehicular manslaughter is not against the manifest weight of the evidence.

**CONCLUSION**

**{¶25}** Based upon the foregoing, we find that the jury's conviction of the appellant on the charge of vehicular manslaughter, and the trial court's finding that the appellant was guilty of failure to yield, was supported by sufficient evidence, and was not against the manifest weight of the evidence. Accordingly, the appellant's first and second assignments of error are overruled, and the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.

By: Baldwin, J.

Delaney, P.J. and

Gwin, J. concur.